UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------x
                                        :
UNITED STATES OF AMERICA                :
                                        :    S12 11 Cr. 576 (WHP)
              - v. -                    :
                                        :
JOSHUA MEREGILDO, et al.,               :
                                        :
                  Defendants.           :
----------------------------------------x


GOVERNMENT'S MOTIONS *IN LIMINE*


                         PREET BHARARA
                         United States Attorney for the
                         Southern District of New York
                         Attorney for the United States
                             of America


NOLA B. HELLER
ADAM FEE
SANTOSH ARAVIND
Assistant United States Attorneys
     - Of Counsel -

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------x
                                         :
UNITED STATES OF AMERICA                 :
                                         :  S12 11 Cr. 576 (WHP)
              - v. -                     :
                                         :
JOSHUA MEREGILDO, et al.,                :
                                         :
                  Defendants.            :
----------------------------------------x
```

GOVERNMENT'S MOTIONS <em>IN LIMINE</em>

For the following reasons, the Government hereby makes the following motions *in limine* with respect to the trial against Joshua Meregildo, a/k/a "Killa," Melvin Colon, a/k/a "Melly," Earl Pierce, a/k/a "Ski Box," and Nolbert Miranda, a/k/a "PayDay," presently scheduled to begin on October 1, 2012:

(1)  An order permitting the Government to elicit evidence at trial that certain defendants were incarcerated at relevant times before and during the period at issue in the Indictment;

(2)  An order prohibiting cross-examination of a cooperating witness about certain prior bad acts; and

(3)  An order permitting the Government to elicit testimony concerning statements by unidentified co-conspirators made in furtherance of the racketeering enterprise.

## BACKGROUND

The evidence at trial is described in detail in the Government's September 13, 2012 letter seeking to admit certain evidence of charged and uncharged crimes committed by the defendants and their co-racketeers (the "September 13 Letter"). Briefly, the evidence at trial will show that from at least in or about Spring 2010 up to and including September 2011, the members and associates of the Courtlandt Avenue Crew (the "CAC" or the "Enterprise"), including the defendants, engaged in, among other things, murders, assaults and attempted murders, trafficking of crack cocaine and marijuana, and firearms offenses.  The charges in the Indictment revolve around the Enterprise's schemes to murder rival gang members and others they perceived as threats to the CAC; the assaults, attempted murders, and murders carried out by members of the CAC; the CAC's narcotics-trafficking business; and the numerous acts of violence and firearms offenses committed by the CAC's members for the purpose of protecting the CAC and its narcotics distribution organization.  Below, the Government includes certain facts relevant to its respective motions *in limine*.

## DISCUSSION

**I.   The Court Should Permit The Government To Elicit Evidence That Certain Defendants Were Incarcerated During Relevant Time Periods**

### A.   Relevant Facts

The evidence at trial will show that defendants Meregildo and Colon were incarcerated before and during certain portions of the time period charged in the Indictment – namely, Spring 2010 through September 2011 – as follows:

- Defendant Joshua Meregildo (i) was incarcerated on state weapons possession charges beginning in or about May 2007 through in or about October 2009; and (ii) was incarcerated on federal bank robbery charges beginning on or about March 9, 2011; and

- Defendant Melvin Colon (i) was incarcerated on state robbery charges (for which he had been adjudicated a juvenile offender) from on or about December 7, 2007 up to and including on or about August 2, 2010; (ii) was incarcerated on a violation of probation from on or about September 1, 2010 through on or about October 15, 2010; (iii) was incarcerated on a violation of probation from on or about January 27, 2011 through on or about April 10, 2011.

### B.   Applicable Law

The Second Circuit has repeatedly held that evidence of uncharged criminal activity is admissible when it constitutes intrinsic or direct proof of the charged crimes. *See United States* v. *Baez*, 349 F.3d 90, 93-94 (2d Cir. 2003). Thus, "evidence that does not directly establish an element of the offense charged [is admissible] in order to provide background for the events involved in the case." *United States* v.

3

*Skowronski*, 968 F.2d 242, 246 (2d Cir. 1992).  In particular, "evidence of other bad acts may be admitted to provide the jury with the complete story of the crimes charged by demonstrating the context of certain events relevant to the charged offense." *United States* v. *Inserra*, 34 F.3d 83, 89 (2d Cir. 1994); *see United States* v. *Carboni*, 204 F.3d 39, 44 (2d Cir. 2000) (holding evidence of uncharged crime admissible as direct evidence of conspiracy "if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial") (internal quotation marks omitted); *United States* v. *Gonzalez*, 110 F.3d 936, 942 (2d Cir. 1997) (holding that evidence of attempted burglary occurring around same time as charged felon-in-possession crime was admissible as "crucial background evidence that gave coherence to the basic sequence" of the charged crime); *see also* Weinstein's Federal Evidence, § 404.20[2][b] (noting that evidence of other wrongs is admissible without regard to Rule 404(b) where those wrongs "were necessary preliminaries to the crime charged"); § 404.20[2][c] (noting that evidence of other acts "is admitted if it contributes to an understanding of the event in question, even if it reveals crimes other than those charged, because exclusion under those

circumstances would render the testimony incomplete and confusing").

### C.   Argument

As set forth in the Government's concomitantly filed letter of September 13, 2012, the Government expects to offer testimony that Meregildo, Colon, and other members of God's Favorite Children ("GFC") - the smaller gang of which many CAC members were a part – engaged in criminal activities starting in or about 2006 and continuing up until 2011.  Evidence regarding Meregildo's and Colon's respective periods of incarceration during that time is inextricably intertwined with the charged offenses, and is necessary to afford the jury a full understanding of, and context for, the defendants' criminal conduct.  Specifically, absent evidence of these defendants' periods of incarceration during portions of the period at issue at trial, the jury would be left with an incomplete and misleading impression as to (1) why Meregildo and Colon appear to have abstained from participating in racketeering activities or suddenly stopped engaging in such activities at certain times – when, in fact, they were incarcerated and thus unable to engage in any criminal conduct; (2) why Colon and Meregildo appear to have suddenly re-emerged as active members of the CAC after periods of inactivity – when, in fact, they were released from prison and merely re-joined CAC members in committing crimes; (3)

5

why defendants, such as Colon, were able to quickly assume more prominent positions of control and authority in place of other, more senior members of the CAC – when, in fact, such he assumed such positions of authority left vacant upon the incarceration of other CAC members; and (4) why these defendants became temporarily, and suddenly, absent from racketeering activities involving the CAC – when, in fact, they had been arrested and temporarily detained by the NYPD.

Absent such evidence, the jury would be led to believe that such periods of activity, inactivity, or changes in seniority within the CAC were the product of defendants' choices rather than the result of their involuntary incarceration.  Such an impression creates a serious risk that the jury will unfairly and inaccurately conclude, for example, that Meregildo voluntarily withdrew from engaging in racketeering activities in March 2011, when, in fact, he was arrested and detained on federal bank robbery charges; or that Colon only engaged in racketeering activities with other CAC members during certain periods between Spring 2010 and September 2011, when, in fact, Colon was constantly engaging in such activities during that time, save for those periods when he was involuntarily incarcerated or temporarily detained on state criminal charges.

In addition, it would be impossible to "purge" any reference to these defendants' periods of incarceration from the evidence

6

in this case, at least not without materially distorting the facts of this case.   Proof of these defendants' periods of incarceration and the approximate timing of their respective entries and exits from incarceration is necessary in order for the jury to understand the context in which a substantial portion of the racketeering activity in this case was carried out.   If evidence of the defendants' incarceration is not admitted, the Government's witnesses, including former members and associates of the CAC, if called to testify at trial, would not be able to address why the defendants sometimes were unavailable to participate in racketeering activities or why such defendants re-emerged as active members of the Enterprise following periods of incarceration; nor would they be able to relay accurate accounts of the changes in membership and leadership of the CAC over the period charged, since Meregildo and Colon left and re-joined the CAC depending on their incarceratory status.

Given that proof of these defendants' incarceration plainly constitutes essential background evidence to the charged racketeering offenses, the only remaining issue is whether the probative value of such evidence is outweighed by the risk of unfair prejudice.   Fed. R. Evid. 403. Under Rule 403, evidence is unfairly prejudicial "only when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence."   *United States* v.

7

*Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980).  *See also United States* v. *Brand*, 467 F.3d 179, 195 n.1 (2d Cir. 2006) (same). Under a Rule 403 analysis, the relevance of the evidence of the defendants' respective periods of incarceration is clear.  First, it demonstrates how, where, and under what circumstances Meregildo, and Colon had the ability to engage in racketeering activities and how and when involuntary incarceration prevented them from engaging in such offenses, providing essential context for witnesses' recounting the story of the CAC's racketeering activities over time.  Second, it explains how and when the charged racketeering enterprise was organized and operated; namely, the times when two of the CAC's most prominent and powerful members were able to exert their influence over the CAC, to organize its other members in conducting racketeering activities, and to themselves commit the crime set forth in the Indictment.

Any prejudice to the defendants arising from evidence of their prior incarcerations would be minimal, and, in any case, would not be unfair because it would not tend to prove any fact other than those for which it was being offered.  Moreover, the Government would not seek to elicit the *reasons* for these periods of incarceration, except to the extent those facts were not already being introduced for other admissible purposes. Additionally, if requested by the defendant, the Government would

not object to appropriate limiting instructions.  *See*, *e.g.*,
*Rosario* v. *Ercole*, 582 F. Supp. 2d 541, 598-99 (S.D.N.Y. 2008)
(upholding, in habeas context, admission of trial evidence of the
defendant's incarceration, which rebutted the defendant's
testimony, where the trial judge "issued a limiting instruction
to the jurors that they were not to consider evidence of [the
defendant]'s incarceration as evidence of a propensity to commit
crimes").

Finally, admission of evidence of the defendants' prior
periods of incarceration would not trigger the rule set forth in
*Estelle* v. *Williams*, 425 U.S. 501 (1976), and extended to federal
courts in *United States* v. *Hurtado*, 47 F.3d 577 (2d Cir. 1995).
In *Estelle*, the Supreme Court found that the stat''s compulsion
of a defendant to wear identifiable prison garb at trial violated
the defendant's rights to a fair trial and the presumption of
innocence.  This decision rested in part, however, on the
conclusion that "compelling an accused to wear jail clothing
furthers no essential state policy."  *Estelle*, 425 U.S. at 505.
Here, there would be no disruption of courtroom decorum or other
implication of the defendants' guilt of the charged offenses.
Morever, the mere fact of prior incarceration does not, by
itself, infringe on a defendant's right to a fair trial or the
presumption of innocence – if it did, descriptions of, for
example, jailhouse confessions would always be inadmissible, as

would much evidence routinely admitted pursuant to Federal Rules of Evidence 404(b) and 609(a).

## II.   The Court Should Permit The Government To Elicit Testimony Concerning Unidentified Co-Conspirators' Statements

The Government anticipates calling cooperating witnesses ("CWs") who were formerly members of the CAC.  The CWs will testify at trial concerning, among other things, statements by members and associates of the CAC that were made in furtherance of the CAC's racketeering activities.

Several CWs will also testify about co-conspirator statements that the CWs are unable to specifically attribute to particular members or associates of the CAC.  Although the CWs cannot provide testimony about which co-conspirators made the statements in question, they will offer testimony establishing that such statements were made by co-conspirators, in furtherance of the CAC's illicit racketeering activities.  Because such statements are not hearsay pursuant to Federal Rule of Evidence 801(d)(2)(E), the Court should permit the Government to elicit such statements, in the event that it finds that the requirements of Rule 801(d)(2)(E) are otherwise satisfied with respect to each such statement offered by the Government.

Federal Rule of Evidence 801(d)(2)(E) provides that a statement is "not hearsay if . . . [it] is offered against a party and is . . . a statement by a coconspirator of a party during the course and in furtherance of the conspiracy."  Fed. R.

10

Evid. 801(d)(2)(E).  To admit a statement pursuant to this rule, the Court must find two facts by a preponderance of the evidence: first, that a conspiracy that included the defendant and the declarant existed; and, second, that the statement was made during the course and in furtherance of that conspiracy. *Bourjaily* v. *United States*, 483 U.S. 171, 175 (1987); *United States* v. *Gigante*, 166 F.3d 75, 82 (2d Cir. 1999).

Under Rule 104 of the Federal Rules of Evidence, a district court may consider a statement itself in assessing the existence of a conspiracy and whether the defendant and the declarant were members therein. *See* Fed. R. Evid. 104(a); *Bourjaily*, 483 U.S. at 180-81; *Gigante*, 166 F.3d at 82; *United States* v. *Cota*, 953 F.2d 753, 758 (2d Cir. 1992). In addition, while "there must be some independent corroborating evidence of the defendant's participation in the conspiracy," *Gigante*, 166 F.3d at 82, that independent evidence need not itself be admissible. *See* Fed. R. Evid. 104(a); *Bourjaily*, 483 U.S. at 178.

The requirement that the proffered statement be "in furtherance of" the conspiracy is satisfied if it is "designed to promote or facilitate achievement of the goals of that conspiracy." *United States* v. *Rivera*, 22 F.3d 430, 436 (2d Cir. 1994). Statements between conspirators that "provide reassurance, serve to maintain trust and cohesiveness among them, or inform each other of the current status of the conspiracy,"

11

further the conspiracy, *United States* v. *Simmons*, 923 F.2d 934, 945 (2d Cir. 1991), as do statements that seek to induce a co-conspirator's assistance.  *United States* v. *Rahme*, 813 F.2d 31, 35-36 (2d Cir. 1987); *see also*, *United States* v. *Amato*, 15 F.3d 230, 234 (2d Cir. 1994) (statement apprising co-conspirator in loansharking conspiracy of status of loan was made in furtherance of the conspiracy); *United States* v. *Rastelli*, 870 F.2d 822, 837 (2d Cir. 1989) (statement among conspirators that defendant was receiving proceeds of extortion was in furtherance of conspiracy because it informed conspirators of status of conspiracy).

It is well-settled that statements of unidentified co-conspirators or co-racketeers are admissible pursuant to Rule 801(d)(2)(E), assuming the requirements of that rule are otherwise satisfied.  "Unidentifiability may be important in some situations, but when the statement itself and the surrounding circumstances provide sufficient evidence of reliability, unidentifiability will not be particularly important." *United States* v. *Cruz*, 910 F.2d 1072, 1081 n.10 (3rd Cir. 1990); *see, e.g.*, *United States* v. *Boothe*, 994 F.2d 63, 69 (2d Cir. 1993) ("[T]he conversations related by Salavec on direct examination were not hearsay because they were 'statement[s] by a coconspirator of a party during the course and in furtherance of the conspiracy.' ... This is true despite the fact that Salavec

12

had not identified his co-conspirators by name."); *United States* v. *Amato*, 2006 WL 1720402 (E.D.N.Y. June 20, 2006) (Garaufis, J.) (where "the Government proffers a statement made by [an] ... unknown declarant, knowledge of the declarant's identity is not a requirement as long as the trial court can reach a determination that the declarant is a member of the conspiracy"); *cf. Zaken* v. *Boerer*, 964 F.2d 1319, 1323-24 (2d Cir. 1992) (distinguishing foundation for coconspirator statement, which does not require knowledge of declarant's identify, from agent statement under Fed. R. Civ. P. 801(d)(2)(D), which does).  Further, even where the speaker is not identified by name, "statements in furtherance of a conspiracy [are] generally not testimonial and [are] exceptions to the hearsay rule [and] encounter[ ] no Confrontation Clause obstacle." *United States* v. *Stewart*, 433 F.3d 273, 292 (2d Cir. 2006).

    Here, the CWs' testimony at trial will include some testimony concerning statements made by unidentified co-conspirators in furtherance of the illicit racketeering activities of the CAC and the charged racketeering conspiracy. The omission of the particular name of the speaker should not, and does not, remove such statements from the scope of the non-hearsay rule for co-conspirators' statements.

III. **The Court Should Issue an Order Prohibiting Cross Examination of a Cooperating Witness About His Prior Sexual Contact With a Minor Female**

The Government anticipates calling a cooperating witness ("CW-1") who is a former member of the CAC, and a close associate of the defendants.  CW-1 will offer testimony concerning, among other things, his knowledge of the history and origins of GFC and the CAC; the CAC's drug-trafficking activities; the CAC's violent conflicts with rival drug organizations; and other violent and firearms-related offenses committed by CAC members. Additionally, the Government anticipates eliciting from CW-1 substantial testimony concerning CW-1's own participation in narcotics trafficking and multiple assaults and attempted murders related to the CAC's racketeering activities as well as other criminal conduct by CW-1, including narcotics distribution, armed robberies, and other violent offenses.

In addition to this criminal conduct, CW-1 previously had unlawful sexual contact with a 14-year old minor.  As set forth below, any reference to or cross-examination of CW-1 regarding this past conduct should be precluded because it is not probative of truthfulness and is entirely unrelated to the subject matter of the witness's direct testimony, Fed. R. Evid. 608(b), 609, 611(b); because any arguable probative value of such past conduct is substantially outweighed by the danger of unfair prejudice that would result from permitting the defense to delve into CW-

1's prior sexual contact with a minor that, while irrelevant to witness credibility, would inflame and distract the jury, Fed. R. Evid. 403; and to "protect [the] witness[] from harassment or undue embarrassment," Fed. R. Evid. 611(a).

### A.   Relevant Facts

In or about December 2010, CW-1, who was then age 19, had sex with a 14-year old female who was intoxicated ("Individual-1").  At that time, CW-1 was present at a crowded party at a vacant apartment (the "Apartment") in the Bronx, New York. There, he encountered Individual-1.  According to CW-1, he met Individual-1 for the first time that night and was unaware of Individual-1's true age.

CW-1 was introduced to Individual-1 by another female ("Female-2"), whom CW-1 knew to be approximately age 19 or 20, and who introduced Individual-1 to CW-1 as her cousin.  CW-1 observed that Individual-1 was drinking and appeared to be intoxicated, but was able to converse with CW-1.  According to CW-1, shortly after being introduced to Individual-1, CW-1 had sex with Individual-1 in a small room in the Apartment. According to CW-1, Individual-1 was conscious throughout their sexual contact and he believed she consented to having intercourse.

Several hours later, NYPD officers arrived at the Apartment and broke up the party.  There, officers found Individual-1 lying

in a bedroom at the Apartment unconscious, naked, and bearing signs of sexual activity.  Semen samples recovered from Individual-1 matched CW-1's DNA profile (which was obtained in connection with the instant case) and also indicated that multiple other individuals had had sexual contact with Individual-1 that night.  Individual-1 was uncooperative with the authorities, and no individual, including CW-1, was arrested or charged with a criminal offense based on the events of that night.

**B.   Applicable Law**

The Confrontation Clause of the Sixth Amendment guarantees the right of a defendant in a criminal case to be confronted with the witnesses against him.  *Delaware* v. *Van Arsdall*, 475 U.S. 673, 678 (1986); *United States* v. *Maldonado-Rivera*, 922 F.2d 934, 955 (2d Cir. 1990).  "This means more than being allowed to confront the witness physically, for the main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination."  *Maldonado-Rivera*, 922 F.2d at 955 (internal quotation and citations omitted).

The Confrontation Clause does not, however, deprive the trial judge of all discretion in setting limits on cross-examination during trial:

> On the contrary, trial judges retain wide latitude
> insofar as the Confrontation Clause is concerned to
> impose reasonable limits on such cross-examination
> based on concerns about, among other things,

16

harassment, prejudice, confusion of the issues, the
witness's safety, or interrogation that is repetitive
or only marginally relevant.

*Van Ardsall*, 475 U.S. at 679.

Indeed, in keeping with these Constitutional principles, the
Federal Rules of Evidence provide instructions for trial judges
regarding the proper scope and subject matters of
cross-examination.  *See Maldonado-Rivera*, 922 F.2d at 955-56.  Of
particular relevance here, Rule 609(a) provides, *inter alia*, that
evidence that a witness other than the defendant has been
convicted of a crime shall be admitted, "subject to Rule 403, if
the crime was punishable by death or imprisonment in excess of
one year" or if the crime "involved dishonesty or false
statement, regardless of the punishment."  "Crimes of force, such
as armed robbery or assault, or crimes of stealth, such as
burglary or *petit* larceny, do not come within" Rule 609(a)(2).
*United States* v. *Hayes*, 553 F.2d 824 ,827 (2d Cir. 1977); *see
also United States* v. *Estrada*, 430 F.3d 606, 614 (2d Cir. 2005).

As such, the Second Circuit long ago noted that it is proper
for a District Court to preclude questioning of a prosecution
witness regarding sex crimes as having an insufficient bearing on
the witness's credibility.  *See United States* v. *Rosa*, 11 F.3d
316, 336 (2d Cir. 1993) ("Nor was it an abuse of discretion to
exclude evidence of certain types of acts such as rape and
burglary as having an insufficient bearing on the witness's

17

credibility"); *United States* v. *Rabinowitz*, 578 F.2d 910, 912 (2d Cir. 1978) (District Court properly precluded questions regarding "prior acts of sodomy upon young children" because such acts did not bear on the witness's credibility).

The Federal Rules of Evidence further limit the introduction of evidence of prior acts by the witness that did not result in a conviction.  Rule 608(b) provides that, "specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence."  This rule gives broad discretion to the trial judge to limit cross-examination in this area.  It states that "in the discretion of the court, if probative of truthfulness or untruthfulness," specific instances of prior conduct "may" be inquired into on cross-examination "concerning a witness's character for truthfulness or untruthfulness."  Fed. R. Evid. 608(b)(1).  Rule 611 makes clear, however, that "cross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witnesses."  Rule 611(a) also provides that the court should "protect witnesses from harassment or undue embarrassment."  Additionally, any such cross examination would have to satisfy the requirements of Rules 403 and 404(b).

18

**C.   Discussion**

CW-1's prior sexual contact with an intoxicated minor does not bear on his credibility, nor does it have any relevance to the crimes charged.  There can be no proper use of cross-examination about this conduct; its only possible purpose would be to alienate and inflame the jury to a degree that might render it unable properly to assess CW-1's credibility.  In short, cross-examination on this subject should be barred as it would likely confuse the jury without adding any probative value.

Additionally, the defendants will have ample admissible and relevant information regarding CW-1's prior criminal activities which they will be able to use to cross-examine him, thereby giving the jury an opportunity to make a discriminating appraisal of his credibility.  The defense should not also be permitted to inquire regarding CW-1's uncharged prior sexual contact with a minor; these facts are irrelevant to the charges in the Indictment, have no bearing on this witness's credibility, and are potentially (if not certainly) inflammatory.  Inquiring about an improper sexual relationship will only inflame the jury and "is not indicative" of CW-1's truthfulness on the stand. *See United States* v. *Nosov*, 221 F. Supp. 2d 445, 449 (S.D.N.Y. 2002) ("In general, '[c]ross-examination concerning immoral acts and acts of sexual perversion may be properly excluded by a trial judge who determines they are not probative of the witness's

19

veracity.'" (quoting *United States* v. *Devery*, 935 F. Supp. 393, 408 (S.D.N.Y. 1996) (Preska, J.)); *United States* v. *Rabinowitz*, 578 F.2d at 912 (trial court properly excluded cross-examination into the witness's prior acts involving the sodomy of young children).  Indeed, such testimony's probative value is greatly outweighed by the danger of unfair prejudice. *Nosov*, 221 F. Supp. 2d at 449. (noting that "fellow judges in this district have held that crimes such as rape and murder have little bearing on a witness's capacity for truthfulness").

**CONCLUSION**

For all of the foregoing reasons, the Government respectfully submits that the Court should issue the orders requested by the Government in this application.

Dated:  New York, New York
        September 13, 2012

                        Respectfully submitted,


                        PREET BHARARA
                        United States Attorney


        By:     _____/s/_____
                Nola B. Heller
                Adam Fee
                Santosh Aravind
                Assistant United States Attorneys
                Telephone: (212) 637-2200

<u>CERTIFICATE OF SERVICE</u>

      I, Adam Fee, Assistant United States Attorney, hereby certify that on September 13, 2012, I caused a copy of the attached Government's Motions *In Limine* to be sent via electronic notification (ECF) to all counsel of record in the above-captioned case.

By:         /s/
           Adam Fee
           Assistant United States Attorney
           (212) 637-1589