UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X

UNITED STATES OF AMERICA,

     -against-                         No. 11-CR-0576(WHP)

MELVIN COLON,

      Defendant.


-------------------------------------------------------------- X


## SENTENCING MEMORANDUM


**MITCHELL DINNERSTEIN**, **Esq.**
Attorney for Defendant, Melvin Colon
350 Broadway
Suite 700
New York, New York 10013
212-925-0793

# *MITCHELL DINNERSTEIN*

### *Attorney at Law*

The Trinity Building

111 Broadway, Suite 1305

New York, New York 10013

212-925-0793

(Fax) 212-346-4665

**HAND DELIVERED**

September 9, 2013

Hon. Judge William H. Pauley III
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

RE: **UNITED STATES V. MELVIN COLON**
    Docket No. 11-CR-0576 (WHP)

Dear Judge Pauley:

      I write on behalf of my client, Melvin Colon, in advance of his sentencing, presently scheduled for September 20, 2013.  On December 4, 2012, Melvin Colon was convicted after a jury trial before Your Honor.    Melvin Colon was convicted of the following counts, Count One, Participating in a Racketeering Enterprise, pursuant to Title 18 U.S.C. § 1962(c); Count Two, Racketeering Conspiracy, pursuant to Title 18 U.S.C. § 1962(d); Count Seven, Conspiracy to Murder in Aid of Racketeering Activity, pursuant to Title 18 U.S.C. 1959(a)(5);   Count Eight, Murder in Aid of Racketeering Activity, pursuant to Title 18 U.S.C. 1959(a)(1);   Count Eleven, Conspiracy to Murder in Aid of Racketeering Activity, Title 18 U.S.C. 1959(a)(5);  Count Twelve, Assault in Aid of Racketeering Activity, pursuant to Title 18 U.S.C. 1959(a)(5);  Count Thirteen, Narcotics Conspiracy, pursuant to Title 21 U.S.C. §§ 841(b)(1)(A), (b)(1)(D) and 846;  Count Sixteen, Murder in Connection to a Drug Crime, pursuant to Title 21 U.S.C. § 841(c)(1)(A);  Count Nineteen, Discharge of a Firearm Resulting in Murder, pursuant to Title 21 U.S.C.§ 924(j)(1);  Count Twenty-One, Discharge of a Firearm in Furtherance of a Crime of Violence, pursuant to Title 21 U.S.C. § 924(c)(1)(A)(ii) and 924(c)(1)(C)(i); and Count Twenty-Two, Possession of Firearm During and in Relation to a Drug Trafficking Crime, pursuant to 18 U.S.C. §§ 924(c)(1)(A)(i) and 924(c)(1)(C)(i).

I am well aware that Count Eight requires that this Court impose a mandatory life sentence.  Count Thirteen requires a Ten Year Mandatory Minimum.  Counts Twenty-One and Twenty-Two require consecutive sentences of Ten and Twenty-five Years.  As a practical matter, Melvin Colon will now spend the rest of his natural life in prison.

It is difficult for me to wrap my mind around that reality.  Melvin Colon just turned twenty-one years old in April, 2013.   These crimes occurred when he was nineteen years old.  The murder charge (Count Eight) that drives the life sentence was based upon the word of a horrible psychopath, Devon Parsons.  Parsons will presumably receive a Section 5K1.1 letter and seek, in my view, undeserved leniency from this Court.

This sentencing memorandum, with the included reports and documents, provide ample reason why a life sentence for this twenty-one year old does not serve justice.  We, as a society, should simply do better than requiring Melvin Colon to be warehoused for his natural life.  Should he solely be held responsible for the life he was born into and lacked the maturity or resources to escape?  Should he be discarded without hope of ever obtaining freedom?

There will be included in this memorandum other reports and documents that I will reference in this portion of the memorandum.  Primarily, they will include the well documented and researched report by Social Worker Lisa Orloff.   Ms. Orloff reviewed more than a thousand pages of school and past prison records.  She found records that discuss Melvin's abilities that will now be wasted, which include some of the numerous records that helps provide us with some insight into who Melvin is.  Secondly, there is included a letter written by Melvin's mother, Edilia Quian, in the attempt to help this Court appreciate how Melvin got here.[1]  Thirdly there is a letter from his aunt Ala'Tesha Young.  Finally, there are some reports regarding health, both mental and physical, for Melvin's father, Melvin Colon, Sr.[2]

Melvin Colon is presently 21 years old.  He was born on April 19, 1992 at North Central Bronx Hospital.  His mother, Edilia Quian, was twenty years old when Melvin was born.  His father, Melvin Colon, Sr. was twenty-five.  Shortly before Melvin's birth, his father was placed in a psychiatric facility.  He was released from the facility shortly after Melvin's birth.  He was diagnosed with a break from reality and paranoia delusions.  The father, in the first seven years of Melvin's life, was also a victim of a shooting and a serious accident where he was struck by a van in a hit-and-run accident causing brain damage.

Melvin has lived all of his childhood at 280-300 East 161Street, Bronx, New York. It is in the South Bronx.   His housing building was federally subsidized Section 8 housing.  His residence is both in the shadow of Yankee Stadium a few blocks to the west and, even closer, the adjacent Melrose and Jackson Houses, notoriously dangerous and crime ridden large city housing

---

[1] An effort was made to obtain a letter from Malik, Melvin's younger brother.  He began to cry every time he started the letter and could not complete it.  Suffice it to say, losing his older brother to prison is a tragedy for him.

[2] Due to the sensitive nature of some of the father's medical history, and abiding by the father's request, I will not file this document on the public b ECF filing system.  Mr. Colon Sr. has expressed a concern about his health and mental health records being made public.

projects[3].   From fourteen years old, except for a few short snippets of time, Melvin has been institutionalized in juvenile or adult facilities.  When he was released from prison, at eighteen, he was prevented from returning to his mother's home because of his juvenile record.  This meant that she could not be around to provide any adult supervision.  Instead, Melvin went to live with his father, who has frankly never been able to overcome his mental health and physical problems to be an appropriate role model for his son.

Melvin has one younger brother, Malik, who is now 17.   Malik is devoted to his brother Melvin.  Malik attends a charter school, Bronx Leadership Academy.   He is required to wear a school uniform every day.   It is hoped that he can avoid the pitfalls of nearly all the youth and his brother from that neighborhood.  So far, he has been reasonably successful.   He has, so far, had no contact with the law.  I am of course guarded that he can overcome his environment and live a successful life.

Melvin's childhood, if described in one word, would be "loss".  He essentially lost his father to the ravages of mental illness, victimization to crime and to an accident that most likely caused him permanent brain damage.[4]  He lost his grandfather, a person who was a musician and positive role model, to death when Melvin had just turned fourteen.  He lost three friends who were murdered on the streets during his pre-teen years in the violent South Bronx.

Melvin had essentially three things going for him.  He was bright.  As Ms. Orloff describes in her report, Melvin scored well on his GED exam, well above the passing score of 2250, and on standardized achievement tests like the Woodcock-Johnson.   He attained test scores well above normal, especially for a person coming from a deprived environment.  Secondly, he liked playing basketball and as a pre-teen travelled to the local Catholic school to play in an organized league.[5]  Thirdly, he has a mother who loves him.  Still, she was incapable of protecting Melvin from the ravages of the street environment where hopes for achievement and success were sadly non-existent.

He lost, at fourteen, his grandfather.  That loss was devastating.  His grandfather, "Welo" was an accomplished musician.  He performed in three movies.  He played with a famous producer, creative director and musician Johnny Pacheco.  He was a role model for Melvin.  Melvin also saw through this relationship a vision that life could be broader than his neighborhood and the crime that overwhelmed it.   Instead, Melvin could not cope with this loss of this potential positive role model.   Melvin, shortly after his grandfather's death, believed his life was futile.  He saw that a mainstream life was unattainable for him.  He turned to the street

---

[3]   At the trial, Detective Dziewicki approximated the population in the two block area of the Melrose/Jackson houses as approximately 20,000 people.

[4]  Melvin Colon Sr. refuses CT Scans/MRIs since his accident to receive the definitive answer. He simply does not want to know.

[5]   One of the things this league showed him was that the school and the male adult role models provided him with some insight that things could be different from where he came from. Unfortunately, the life of the kid from the projects was simply different from the Catholic school where usually there was a supportive two parent family and a school environment that encouraged learning.   It was a very large step for Melvin to function in that environment.

life and bonded with others like him who perceived themselves as outcasts.   He got involved in criminal activity shortly after his grandfather's death.    From his first incarceration when he was fourteen, he was in jail for all but less than a few months.  Melvin's immature adolescent conduct will now never be reconsidered.  No matter what happens in prison, no matter how Melvin develops and matures, no one will ever reconsider what the law now seemingly requires, a life sentence.  That is simply not right.  I write, and Ms. Orloff writes to tell this Court, to tell Melvin and to tell his mother and his loved ones that we as a society ought to have cared more.  That is the reason for this memorandum and the detailed letter by Ms. Orloff.  It provides an opportunity for all of us to say that Melvin Colon's life should have meaning.  It should have mattered more than for Melvin to be simply warehoused.

## Title 18 USC Section 3553 (a) Factors

Section 3553(a) requires sentencing courts to impose a sentence that is sufficient to meet the following factors, but should be no greater than what is necessary.  In this case, this Court must sentence Melvin Colon to a life sentence due to the conviction of Count Eight, Murder in Aid of Racketeering Activity, pursuant to Title 18 U.S.C. § 1959(a)(1).   The other counts, some with long and I believe, draconian mandatory minimums, still provide the Court with some discretion to impose a "sufficient" but not greater than "necessary" sentence.  For all intents and purposes, Melvin Colon will serve the rest of his natural life in prison.  Your Honor's role and wisdom is minimized by the Court's inability to use any discretion in imposing sentence.[6]

Nevertheless, I will discuss relevant factors to provide the Court with some insights into who Melvin is and to provide him and his family with a more detailed perspective than what is provided by the Probation Department and the Government.

● " The nature and circumstances of the offense"  Title 18 USC § 3553(a)(1).

The court in the denial of Colon's Rule 29 and 33 motions states that the defense must meet a very high standard to overcome the verdict that was reached by the jury. Specifically, I address Count Eight, the Murder in Aid of Racketeering conviction that requires this Court to sentence Melvin Colon to mandatory life.   While this Court found that the verdict was "not incredible", (p. 3 of this Court's June 13, 2013 decision), it did not make the affirmative statement that the testimony was "credible".

Frankly, as it pertains to the conviction in Count Eight, this Court would have needed to find the testimony of Devon Parsons' "credible" that Melvin fired the gun in the killing of Delquan Alston to support the analysis presented by the Government.  The Government's

---

[6]  It is my hope that the Court will not use its discretion in advising the Bureau of Prisons that Melvin be sent to a Super-Max facility where Melvin will be in a segregated housing unit. Also such a facility would be far from his family.  I am concerned that the Government will argue that such harsh confinement is necessary.  Neither this Court nor the Government know how Melvin will mature over time.  I will seek that this Court simply request that Melvin be permitted to remain in the Metropolitan area so that family visits will be possible.

argument went beyond that Colon did more than "aid and abet".   The trial presented much evidence that there was only one shooter and that shooter was Parsons.  Concededly, the jury reached a different conclusion, one that I believed, was not borne out by the evidence or the Government theory.   I will not repeat those arguments now.  The Court is well aware of them.  Now, though, this Court has the responsibility to sentence Melvin Colon on Count Eight, as well as to the other counts.  It is this count that gives Melvin no hope of release.  Can this Court be confident that the jurors got Count Eight right?   It is that conviction that requires the imposition of a life sentence to this 21 year old, nineteen at the time of the incident.  In contrast to Parsons, a multiple indiscriminate killer, there is no evidence that Melvin was a participant in other shootings.  To impose a life sentence on the testimony of Devon Parsons alone is simply wrong.


● "The history and characteristics of the defendant"  Title 18 USC § 3553 (a)(1)

        I have known Melvin Colon since his arrest in September, 2011.  Due to the nature of the charges and the Government investigation regarding capital punishment in this case, I obtained the resources of a Social Worker, Lisa Orloff,  to provide the Court with a detailed background of Melvin's history and character.  Ms. Orloff, over the years, has gotten to know Melvin and his family.  She spoke to numerous individuals who worked at different juvenile facilities where Melvin was incarcerated.  She spoke with individuals who coached him during his basketball playing youth.  Ms. Orloff's report speaks for itself and is included as the best description of Melvin's history and characteristics.

        I do not plan to repeat the items in Ms. Orloff's report that is included in this memorandum.

● "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense and (B) to afford adequate deterrence to criminal conduct"  Title 18 USC § 3553) (2)(A) and (B)

        No one questions the seriousness of the offenses in this indictment.  No one questions the sad reality that neighborhoods like the Melrose/Jackson Houses has been crime riddled for decades, long before Melvin was born.  No one seriously questions that too many of the youngsters from these areas, some like Melvin with particular talents and skills, are warehoused by society to express the view that these people should be held personally responsible for their misconduct irrespective of their life circumstances.  This Court is sadly precluded from using its discretion when imposing the sentence in this case.  Instead, this Court is required to ignore the realities of  Melvin's life, things outside of his control. when imposing sentence.

        As required by the statute, does this life sentence, promote respect for the law?  My view is that it does not since the failure to take into account, in any meaningful way, the root causes of Melvin's life , in fact, thwarts justice and does not promote it.  What is the lesson for others in his community who sees too many of their older brothers either in jail or dead?  What hope does it give them to become worthwhile members of the greater society?  How does our society show it actually care about people from Melvin's community, when what is seen is more often that

society only shows an interest in them only when it comes to punishing them?

Then, there is the impact of the Government use of cooperating witnesses. Here, the government uses people like Devon Parsons to help them make their case. Does making deals with people who are the most awful, actually "promote respect for the law"? Does it in effect create from those communities a cynical view of the law where often the worst, as here, receive benefit, while others less culpable receive the ultimate sentence, short of death?

● "to provide the defendant with needed educational or vocational training, medical care or other correctional treatment in the most effective manner" Title  18 USC § 3553(2)(D)

As Melvin grows up in prison, it is unclear what will happen. Growing up can hopefully provide him with a more mature life perspective. Melvin is bright and does have the potential of being a positive force and a leader in prison. He truly cares about his brother Malik. He hopes to, at least, be able to teach Malik to stand alone and avoid the peer influence that ruined Melvin's life.

Of course, we hope that Melvin could obtain skills, whether educational or vocational, while in prison. It is of course unclear whether such opportunities exist. Melvin certainly has the ability to benefit from such programs. Whether he will be given the opportunity is another story.

● the need to avoid unwarranted sentence disparities among defendants with similar records who have been convicted of similar conduct  Title 18 USC 3553(a)(6)

This Court case has sentenced multiple defendants in this case. My review of the sentences, Government and Defense Memoranda  and sentencing transcripts, have provided me with some of the struggles this court has made efforts to attempt to reach just sentences. In the case of Melvin Colon, this Court's wisdom and discretion cannot be used as a basis for reaching a just sentence. Instead, it is bound by the harsh law that fails to account for the individual circumstances relevant to this defendant.

In my view that is terribly unfortunate.

## V.  Conclusion

For all of the foregoing reasons, the defendant seeks that this Court sentence Melvin Colon to a sentence that best serves justice. Such a sentence would require this Court to use its discretion and wisdom. Unfortunately, the law does not permit this Court to use such discretion. It requires the imposition of a life sentence on this twenty-one year old youngster. I do not believe that such a sentence is just. I ask the Court to find a better way.

- 8 -

Thank you for your consideration of this letter.

Respectfully submitted,

/S/ *Mitchell Dinnerstein*
Mitchell Dinnerstein
Attorney for Melvin Colon

/S/ *Anthony Cecutti*
 Anthony Cecutti
Attorney for Melvin Colon

cc.: Adam Fee and Santosh Aravind
     AUSA